Good morning. United States against Franshon Stapleton. All right, I see Mr. Keenstra waiting for Ms. Nelson. There she is. All right, both counsel are on the screen. Ms. Nelson, you may proceed. Good morning. May it please the court. My name is Kristen Nelson and I represent the defendant, Franshon Stapleton. This court must vacate Mr. Stapleton's guilty plea as it was unknowing and involuntary as the district court was well aware. Mr. Stapleton vigorously fought and continues to fight the legality of his arrest in the early morning hours of November 12, 2017, and the charges filed in this case. He filed motions and argued often without the assistance of counsel, much to the frustration of the government and the district court. But the government's, and more importantly, the district court's frustration with Mr. Stapleton does not justify his rights being violated. As this court knows, a guilty plea is voluntary when it is not induced by threats, misrepresentations, and the defendant is aware of the direct consequences of the plea. A guilty plea is intelligent and knowing when the defendant is competent and aware of the charges and advised by competent counsel. It is clear this plea was not voluntary based on the misrepresentations during the plea hearing following Mr. Stapleton's confusion. The district court misled Mr. Stapleton. The appellate court's going to see all that, Mr. Stapleton's concern after hearing the government's factual basis for his plea. The appellate court is only going to address the issues that you raised to it, and it is my understanding the issues you're reserving, the right to raise, is the one, the facts surrounding the motion to suppress. The district court knows this is not true, and they did not tell Mr. Stapleton the truth because they wanted to have the case resolved and they did not want to do anything to jeopardize it. The opening statement in the government's brief, Ranjan Stapleton treated woman like property, proves just how wrong the district court was, and the district court knew this, as did the government. And but for the district court and the government's assurance that the only thing this court would see would be what Mr. Stapleton wanted this court to see, he would not have pled guilty. Ms. Nelson, is it your contention the district judge intentionally misled Mr. Stapleton? Yes. Yes, it is. I believe no accusation. Well, I don't, I guess I should not say intentionally, I believe it was frustrated and but the district court knows. They know that what happens in the appellate process is that the appellate writes a brief, the government responds, and they can bring any facts they want to before it. And you think the district judge was misleading Mr. Stapleton by saying he could raise issues that he wanted to raise? I'm just, now I'm confused about what you're saying. Well, what the district court told Mr. Stapleton is that the Court of Appeals is only going to hear what you bring before it. As if the government doesn't get to respond, is that what you're inferring from that? Correct. As in that the government, that you, the Court of Appeals, are not going to see anything other than what Mr. Stapleton wants you to see. And he doesn't know enough as a pro se defendant to understand how that process works. That he'll file a brief, the government's going to get to file their own, and they're going to be able to present the facts that they want to present. So, for that reason, the knowing factor also was not met. He asked for counsel, and it was denied to him, and he was allowed to proceed pro se, which allowed for this confusion during the plea hearing to happen. You agree that he did twice invoke his foretory for self-representation, and it was recognized and honored after an appropriate colloquy, right? Well, I don't think that the colloquy went far enough. I think it was very cursory. It asked, are you familiar with the court procedures? Are you familiar with the rules of evidence? I have access to the law library. I'm doing my own research. But to explain what an attorney could do, and I think that's what Mr. Stapleton needed to hear, a court could assist with filing motions, conducting an investigation, requesting an expert to look into what, if Mr. Stapleton's cell phone settings were set to private when he purchased it, and why was his cell phone entered into evidence almost 24 hours later? And those are all things that an attorney could have helped him with, and Mr. Stapleton needed to know. So you're saying Faretta was not complied with? It was not complied. No, I think it could have been. Faretta was cited in your opening brief. Well, no, there was a Faretta colloquy, and what I am saying is that it was cursory, and I believe that it could have gone further, and it would have probably... It can always go further, and we also have case law saying that if the district judge, or at least we have... I don't know that we've actually reversed, but we've clearly signaled that if the judge paints the prospect of self-representation in two dire terms, that can be a violation of Faretta, right? That is correct, but I don't think saying to a defendant who is so vigorously fighting the charges against him, you understand an attorney can help you with your motion for an expert, or help you with these motions you want filed, or conduct this investigation that you want to have done. And so I don't believe that that would be a dire warning. I think it's stating just exactly what an attorney can and should be doing. And I believe in the hearings leading up to the jury trial, which ultimately became his change of plea hearing, he panicked, and it is clear he didn't know what he was doing. He wanted an attorney. He was in over his head, and the court said, you can have your standby counsel, but standby counsel wasn't assisting him either with these motions that he was filing before the court, and with his request for an investigator. And so that communication was completely broken down. So I think rather than holding all of the attorneys that had to withdraw against him, I think the court had an obligation to either allow him to have a new attorney or say to standby counsel, I appointed you to provide elbow service, I believe, or technical assistance. Part of this is help him with this motion for an independent investigation or for an expert, and that didn't happen. That really is the role of standby counsel? I don't think the role of standby counsel is really clearly defined. I think it's ultimately up to the court to define it. But here, it was defined as, I believe, elbow, you know, getting elbow advice at counsel's table or providing technical assistance. And I think based on the complexity of the charges, the court, knowing he wasn't familiar with the law, court procedure, the rules of evidence, you know, he wasn't represented during his plea hearing. And the judge's inquiry all show that it was not a knowing voluntary plea, and I see that I'm going into my rebuttal time. So what you're describing is a district judge who should have violated his Faretta rights. No, I'm saying that it should have gone further. I'm not saying that he should have violated his Faretta rights. But I think educating Mr. Stapleton as to what an attorney can actually and should have done for him. All right, if you'd like to reserve the rest of the time for rebuttal, we can move to Mr. Kinstra. May it please the court. Good morning again, Your Honors. Jeff Kinstra on behalf of the United States. I'd like to begin with the claim about the defendant's access to counsel. And the record makes it very clear that the defendant had the assistance of counsel available to him. He just simply refused to accept it. As Your Honors have noted, after two Faretta colloquies, the defendant waived his right to counsel. Even then, he continued refusing the assistance of his appointed counsel in a standby role and demanded that his attorney be withdrawn in that context. And even after that, the court continued to implore him to accept his attorney's assistance, and he didn't. I think that's best encapsulated by the exchange on the morning of trial, which was, as the defense counsel noted, also the plea hearing. When the defendant broached a conditional guilty plea that morning again, after a brief recess for the parties to discuss the issue amongst themselves, Judge Shandy came back to the bench and he said, Mr. Stapleton, I have taken the liberty of calling your attorney and asking him to come here to represent you and help you assist with your negotiation of this conditional guilty plea. And the defendant said no. He had no interest in doing that. And so it very clearly shows that he had the assistance of counsel. He just refused to accept it. The concerns that a defense counsel raises this morning about the adequacy of the Faretta colloquy are waived because they weren't raised in the briefing. And the concern that the defendant didn't know what an attorney could do for him, I think, is unfounded. The defendant plainly knew what an attorney could do because he had multiple attorneys representing him relative to the motion to suppress. And as he told Judge Shandy on September 3rd during that hearing, the reason he decided to represent himself was that he wasn't satisfied with the way that his attorneys were doing those things. He thought he knew better. And once he knowingly or involuntarily waived his right to counsel, Judge Shandy and Judge Mehm had no choice but to let him do that. So they respected both his right to counsel when he had it, as well as his choice to waive counsel. As to his request for other counsel, a defendant who receives appointed counsel has no right to counsel of choice. So he can't choose which attorney gets to represent him. And even if viewed as a claim for denial of substitute counsel, it wouldn't fare any better because the district court made a factual finding that his requests were simply for the purposes of delay. That was not clearly erroneous. That was amply grounded in the record. As Judge Shandy noted at another hearing, there's no reason to believe that appointing another attorney for the defendant would make him any happier with that attorney. So he can't show that he was denied access to counsel. And his access to counsel, I think, is the primary basis for his motion withdraws guilty plea. And so at the outset, that claim, I think, falters. This court reviews the issues on appeal relative to the guilty plea only for plain error because the defendant didn't raise these arguments that he's raising on appeal before the district court. But he can't show any error, much less a plain one. I think the idea that the defendant was told at the change of plea hearing that he would unilaterally dictate to this court what facts this court would consider, isn't accurate. I don't think that's a fair characterization of the record. The defendant asked what facts this court would consider. The district court said, well, the court of appeals will consider the claims that you raised to it. And that's truthful. On the next page, on page 54, the transcripts, the defendant said, well, what about those other facts? Referring to the facts that, the factual basis that the prosecutor had recited. And the court said, I'm not sure how to answer that except to the extent it's relevant to the issues you raised, yes. And to the extent it's not, then no. And of course, this defendant had been vigorously litigating this case throughout the case. He wasn't under any misimpression that he could unilaterally dictate to the court what things the court could decide. At every stage, including at the suppression hearing, which he was contesting, the government had vigorously litigated its own positions. And so there was no reason for the defendant to think that that would somehow change on appeal. Beyond that, the defendant can't show plain error and hasn't shown any way how this would affect his willingness to plead guilty. To the extent his reply brief suggests that there was confusion about the Anders process. This court has never suggested that a district court has to advise a defendant about the Anders process in order for a guilty plea to be knowing and voluntary. And in any event, again, the defendant was aware that attorneys couldn't file frivolous motions. And he couldn't require his attorney to file things that his attorneys didn't deem fit. He had been advised both by Judge Darrow in July 2019 and by his then-attorney, Mr. McGuard, in November of 2019 that attorneys can't make frivolous filings. He had also told Judge Shadid on September 3rd, 2020, that the reason he wanted to represent himself is that his attorney wasn't doing the things that he wanted to. So he clearly understood he couldn't dictate to his attorneys what issues to raise. So he hasn't offered any basis for this court to upset his plea, which was entered after a thorough colloquy with the district court. As to the defendant's point that he had been litigating this case and defending against it up until the morning of trial, that doesn't show that his guilty plea wasn't knowing or voluntary. This court has recognized that defendants often, when their feet are ultimately held in the fire, plead guilty. And the defendant himself had noted earlier in the case, in an exchange with the district court at one point, he said, I'm not dumb enough to bring this case to trial. I just want my motions heard. And so once the district court had made very clear that his motions had been heard and that it wasn't going to continue reconsidering them, the defendant at that point pled guilty just like he had said he would previously. The last issue that I don't think has been raised this morning, but was in the briefs about the defendant's request for the court to appoint an expert. It's not the court's role under the Criminal Justice Act to go out and bring in experts on a party's behalf. The court's role is more limited to authorizing funding for parties to pay experts that they have retained. Beyond that, the defendant didn't identify the cost, which is, of course, an important concern under the Criminal Justice Act, because there are caps on the expenses that a court can authorize. And really, most fundamentally, he didn't show how this would have been relevant to a plausible defense. This court frames that standard by asking what a reasonable attorney would have done. I think the first thing to note there is the defendant had been represented by at least three different attorneys in connection with the suppression motion, and none of them raised this issue. And on top of that, the defendant's request was for a forensic analysis of a cell phone. That analysis had already been done, and that expert had testified at the suppression hearing. Agent Mitchell testified that the settings on the defendant's phone were set to allow exactly the sorts of notifications that Officer Marcotte saw appear on the phone that morning. The defendant had an opportunity to cross-examine and question the expert at that hearing. And so his request later on for the district court to bring in more unspecified experts is really just a fishing expedition. Last, in his reply brief, I just want to note, the defendant suggested there was some defect in the chain of custody that wouldn't have been material to suppression. If he wants to allege a problem with chain of custody, that might be something he could cross-examine on at trial, but that's not a basis for suppressing evidence. And in any event, he hasn't shown how any expert testimony would speak to that issue. Officer Marcotte testified in multiple hearings. If the defendant wanted to know where the phone was between the time when Officer Marcotte took it into evidence and the next day when the evidence custodian officially accepted it into evidence, he just needed to ask Officer Marcotte, and he would have been told exactly where the officer securely stored this in evidence until such time as the evidence custodian came back on duty and logged it into evidence. So the district court acted well within its discretion in denying the motion for an expert, and in fact, in every respect in this case. So unless your honors have any other questions, the government would ask this court to affirm. Thank you. Yes, thank you. First, the government's contention that he had the assistance of counsel. He did not have the assistance of counsel during the plea colloquy and during the plea hearing. While the court offered to have his standby counsel reappointed and come back to help with plea negotiations, he was not offered to have him during the plea colloquy and during the exchange back and forth. And again, I think had he had counsel at that point, there's a good chance we wouldn't be here. It doesn't change the fact that his plea was not knowing and voluntary. Second, you know, regarding the expert, as counsel stated, this was not a fishing expedition. Mr. Stapleton was very specific as to what he wanted. He wanted the AT&T salesperson to come and testify or be interviewed about the settings on his phone. The government's response was, well, we don't know who set up his phone. Well, that's self-serving. Of course the government's not going to go and try and find out who set up Mr. Stapleton's phone to see if it was set to private. That's something an investigator could have done or an attorney could have helped him with that. So I don't believe this was a fishing expedition. He had very legitimate concerns that deserve to be addressed. And unless this court has any other questions, I simply ask that Mr. Stapleton be allowed to withdraw his guilty plea. I don't believe it was knowing or voluntary. Thank you. All right. Thank you very much, both counsel. The case is taken under advisement.